Good morning and may it please the court. I'm Paul Barnes of the Mississippi Attorney General's Office here on behalf of Commissioner of Corrections Marshall Fisher and the other state officials named as the defendants in this method of execution lawsuit. We're here today because the district court entered a broad, far-reaching injunction that went well beyond the pleadings in the complaint, well beyond the motion for preliminary injunction, well beyond the evidence and the record. The district court abused its discretion in two primary ways. First, the district court misinterpreted and failed to apply the 14th Amendment because this particular injunction is based on an alleged violation of state law. The 11th Amendment and Pennhurst say that that is improper. Plaintiff's purported 14th Amendment due process claim is simply a state law statutory construction claim masquerading as a federal claim. Second, even if this claim could survive the 11th Amendment bar, the injunction entered by the district court went much too far and was not supported by the evidence. Now we're focusing today on count two of plaintiff's complaint because that's the only part of the complaint that the district court pointed to in support of the preliminary injunction. The district court held that plaintiffs had at least shown a likelihood of success on the merits on their 14th Amendment due process claim in count two. The complaint is about compounded pentobarbital. You can search the complaint in vain for reference to any other first drug, to midazolam, it's just not there. And you can look at the prayer for relief, which I believe is on either page 46 or 49 of the record, and if you look at the relief that the plaintiffs requested in the complaint, there's nothing in there that would support the relief granted by the district court. Now, the state doesn't have compounded pentobarbital, can't get compounded pentobarbital? Currently. Currently, that's correct. And has no, and offered repeatedly, Your Honor, to stipulate, to enter a binding stipulation that the court, that the state would not use compounded pentobarbital to execute these plaintiffs. But the district court not only enjoined the state from using compounded pentobarbital, he enjoined the state from using any form of pentobarbital. That would include Nimbutol, the name brand FDA approved form of pentobarbital, which currently the manufacturer will not sell, but which may become available in the future. District court also enjoined the state from using midazolam, despite the total lack of pleadings, motion, evidence concerning midazolam. Has a subsequent motion or proceeding been filed regarding that drug? An amended complaint has been filed, which does actually include allegations about midazolam, but because this preliminary injunction is in effect, plaintiffs have not gone . . . Is it in this case? It's an amended complaint in this case? That's correct, Your Honor, but there have been no more proceedings. There's not been a preliminary injunction hearing or hearing on midazolam to, you know, induce an additional record. I assume because this injunction is in place and so they don't, they haven't needed to go forward, but they have filed their amended complaint in accordance with the schedule order entered by the court. And the last part of the preliminary injunction is, it shows the very egregious nature of the district court's abuse of discretion when the court went on to say that the state could not carry out executions with any other drug or combination of drugs without prior approval of the court. Now, in 2012, in Thorson v. Epps, this court upheld the constitutionality of Mississippi's three-drug protocol. We think any fair reading of the preliminary injunction says that we could not carry out an execution if we could get sodium thiopentol, if we could get nebutal. We're barred from doing anything until we get approval of the court. Therefore, we respectfully request that this court vacate the preliminary injunction and remand. On the Eleventh Amendment issue, in Pennhurst, the Supreme Court held that the Eleventh Amendment bars the federal courts from entering injunctions based on alleged state law violations. Yet that is exactly what the district court has done here. Count two is based on the allegation that the use of compounded penobarbital would violate Section 99-1951 because it is not an ultra-short-acting barbiturate or other similar drug as mandated by the statute. That is purely an issue of state law. State law issues should be presented to the state courts of Mississippi because it is their realm of expertise, it is their realm of expertise. The district court invaded the purview of the state courts with this particular injunction. The plaintiffs are trying to bootstrap that alleged violation of state law into a federal substantive due process claim. You can search their brief in vain for citation to any method of execution case in which Fourteenth Amendment substantive due process has been the basis of the ruling. Now, principles of federalism say that we have dual court systems and that each should stay within their realm of responsibility. The district court did not do that. The district court never should have reached this state statutory construction issue. Plaintiffs obviously perceive that they have Eleventh Amendment problems because their primary assault on our Eleventh Amendment argument is procedural. They say we did not raise this issue sufficiently in the district court. Well, that is simply not true. We raised it in our answer. We raised it admittedly in a footnote in support of our motion to dismiss. We raised it at the plenary injunction hearing and squarely presented it to the court. Now, the fact that the court did not expressly address the Eleventh Amendment in the short order that was entered and which was read to us by telephone does not mean that the issue was not raised and presented. This was not a matter of leaving something out of an appellate brief and raising it for the first time on appeal. Yet, with the Eleventh Amendment, even that is enough. Supreme Court and this court, in Edelman v. Jordan, the Supreme Court said you can raise the Eleventh Amendment first time on appeal. This court said the same thing in Perez v. Jordan and other cases. Now, plaintiffs' pleadings and arguments seem to waver back and forth between procedural due process and substantive due process because they essentially argue they have a liberty interest that the state cannot arbitrarily violate. Well, that is procedural due process language to me when you talk about arbitrarily depriving someone. But they claim this is a substantive due process claim. Well, it fails either way, regardless of how you analyze it. Procedural due process simply does not work for the plaintiffs because the plaintiffs clearly have an obvious pre-deprivation remedy, which is racist claim in state court and have it determined. Admittedly, they would not have a post-deprivation claim, but they do not need it. They have pre-deprivation due process. Substantive due process does not work either because the plaintiffs have not shown that the use of compounded penobarbital or midazolam should shock the conscience of the court. This court said in Dovey v. McGee v. Covington County that the burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law. Plaintiffs have not shown how the use of drugs that have been upheld as constitutional by the U.S. Supreme Court in June and by this court, such as upholding Texas' use of compounded penobarbital, how that would shock the conscience of the court, how that's stunning. Let me ask you a question. Yes, Your Honor. I'm going away from your argument for a moment. Does the Mississippi legislature have anything under consideration at all about this movement toward the anesthetic-only procedure? As Dr. Heath pointed out in his affidavit, the dominant form of lethal injection now has become anesthetic-only, in which the president has simply administered a lethal dose of the sedative anesthetic drug, period. And of the 35 executions conducted in 2014, only 11 used a triple drug protocol. And in 2015, of the 13 executions by lethal injections, 11 used single-drug barbiturate-only methods. Only two used a triple drug protocol. This does not go to your legal argument. I don't have any comment about that. Your Honor, I would hesitate to say what the Mississippi legislature might be considering. However— Of course, of course. As has been said of the Texas legislature and all the others, one cannot always know what the sense of the people are. Now, I just raise that because I did find that the description given to the—by Dr. Heath of what's going on, as an expert in the country, is quite informative about what plainly is a very large shift away from—this has nothing to do with the legality of it. But it has everything to do with where this is going, ultimately, apart from this case. And so I just want to mention that to you because I think that that solves many, many problems, the single dose and so forth. And I found his—that particular affidavit of his to be very helpful in understanding the medicine and its fit into where we are. Yes, Your Honor. But I would note— I think we have your argument. I think it's pretty straightforward. Well, I was going to say, the only claim at issue in this hearing is Client Count 2. And that goes—that's part of Count 1 and Count 3, which the district court didn't rely on, which plaintiffs said in their brief, you know, is not part of this argument. But it doesn't—Dr. Heath's opinion—Dr. Heath has been espousing a one-drug protocol for decades. But it didn't stop the U.S. Supreme Court in Gloucester at the end of June from upholding Oklahoma's three-drug protocol. No, I said—I don't suggest anything other than—that's why I said—talked about the legislature, not the Supreme Court. Well, and obviously, Your Honor, might the Mississippi legislature in the next session take action that could moot this case? I think absolutely it could, whether it will remains to be seen. But a point well taken, Your Honor. But so—and last on that issue before I quickly move to the—not supported by the evidence. Even if you've got a 14th Amendment due process claim, it would not provide any greater protection than the 8th Amendment. And Gloucester, we think, was pretty devastating to their 8th Amendment argument. Now, as I mentioned in my opening, the complaint is all about compounded pentobarbital. I mean, it is clearly the focus of the complaint. Yet, nonetheless, counsel opposite convinced the district court to enter an injunction without any factual allegations of mount bonazulam in the record, without moving except standing up at the hearing and asking the court to go farther, and without proof in the record about modazolam. And the district court accepted it and did that. I have a question about mootness. Yes, ma'am. Why would it be moot if other states are still able to obtain and use the drug, and if the state believes its use is legal under 99-1951, if Mississippi were once again able to procure the compounded pentobarbital from a new source? Why would it be moot? Well, our mootness argument is based on the use specifically of compounded pentobarbital. And so, we think to that extent it is moot because, again, the evidence in the record, Commissioner Fisher's sworn declaration, says that we don't have it, we can't get it, and we won't use it. If you're able to get it. If we were able to get it. Again, if we could get Nimbutol, the FDA-approved form, then it would be a live issue. But we can't get that because, that's why it's still in the protocol. It's because if the manufacturer was to change its mind and there was an FDA-approved form, the state would, I believe, strongly consider using it. But the fact that we don't have compounded barbital and can't get it is the basis. The district court essentially flipped the burden onto the state to prove that it couldn't get it. And we believe we did with Commissioner Fisher's affidavit. But the fact that Texas and Georgia and Missouri have been able to obtain compounded penobarbital does not mean that Mississippi can get it because those states won't tell us where they got it. They're not disclosing it. That's how they're able to get it. So, you just would stand by your representation in your affidavits of your client that you will not use it and that should be the thing that declares mootness if you don't win on your first argument? Yes, Your Honor. Well, again, and we don't think this is a voluntary cessation case because we can't get it. But even if it was a voluntary cessation case, when the testimony is uncontradicted, as Commissioner Fisher's affidavit is, then it should be accepted. This court, Circuit President says it should be accepted by the court. We don't think that the fact that some other states are getting it somehow that we don't know and cannot achieve changes the fact that this state cannot get it. At this moment in time, but that could change tomorrow. Well, Your Honor. It's not an immutable. Theoretically, it could. But, for example, Arizona is in the news recently because they're trying to import drugs from foreign companies, I mean foreign countries, illegally, and they've been stopped. But we have no plans to do that. We've made it clear that the state intends to use midazolam to execute these particular plaintiffs. Plaintiffs' counsel just stood up on the second day of the hearing and said, you know, midazolam would violate this statute too. That's it. Argument of counsel is not evidence, as this court, as we all are well aware. And even if the court reached that issue, I apologize. May it please the court. I'm Jim Craig. With me is Emily Washington. We're with the Roderick and Solange MacArthur Justice Center for the two named plaintiffs. Ms. Ferraro, who is also at counsel table, represents the intervenor. I'm giving the entire argument today. Let me start with this. The district court did not abuse its discretion in finding a substantial likelihood of success on the merits on our claim that any drug that is not, that plaintiffs have a protected liberty interest in not being punished in any manner other than that is specifically set forth and directed by state law. That is not, unlike Pennhurst, a claim based on state law in its standing alone. How would you characterize your constitutional claim then? As a procedural or as a substantive due process? Substantive due process, Your Honor. It's the same as the Burge case, which we cited. The Burge came up in habeas, and Mr. Burge had been sentenced to life without parole, which was contrary to Louisiana statutory law. In habeas, this court found that to be a violation of 14th Amendment due process because it is the essence, it's the core of a liberty interest that the state cannot confine and punish a person beyond or outside the authority given to them by the people. I would have thought Hicks would be a better argument for you. I beg your pardon? I would have thought Hicks v. Oklahoma might give— We argued Hicks. We briefed Hicks, of course, Your Honor. And I think that even if you unpack it from the standpoint of a 1983 claim, the Thompson case, which says that the use of explicitly mandatory language in connection with the establishment of specified substantive predicates that limit discretion forces a conclusion that the state has created a liberty interest. Here the statute says very specifically, the manner of inflicting the punishment of death shall be, by continuous intravenous administration of a lethal quantity of an ultra-short acting barbiturate or other similar drug in combination with chemical paralytic agent, and then carries on to the rest of the statute. So the Mississippi statute has the components that Thompson talked about. It's explicitly mandatory, shall, not may, and it limits the discretion of the commissioner specifically to these particular classes of drugs. And Mississippi first, just to be clear about the chronology here, had a protocol that said if we can't get sodium thiopental, we'll use pentobarbital. So the suit we filed in April of this year focused on the policy, custom, and usage of Commissioner Fisher. That's what we were, in a Monell claim, constrained to do. Yes, sir. How would we conclude that it shocks the conscience to execute a condemned inmate using the lethal injection protocol that the Supreme Court explicitly approved last June? There's two answers to that, Your Honor. Number one, it shocks the conscience for a state to punish an offender in an unauthorized manner, in a manner not authorized by the state's people. So the Supreme Court could have said, as it has said, for example, that a very long term of years would be proportional, would be constitutional, say, in Illinois. But if the Mississippi legislature has not determined that a 40-year sentence is appropriate for burglary, that would not be sufficient. You can see that you can't make an Eighth Amendment claim here. No, I disagree with that, Your Honor. Let me say one other thing about Colosso. Did the Supreme Court decision in June, among other things, foreclose that argument? I don't think so, Your Honor, because the protocol that the Supreme Court affirmed the denial of a preliminary injunction, to be clear about that procedural history, but the protocol is not just the choice of the drugs. It's the choice of the drugs and the way they're used. Justice Alito's opinion specifically talks about Oklahoma's protections. Mississippi does not, all Mississippi did was put midazolam in the lineup. He talks at length about whether the controls to be sure that the maximum is achieved at a correct time. It's the timing in the sequence that's critical to avoid the difficulty. Exactly. And Mississippi has not done that. In fact, Your Honor, when we moved admission of the Oklahoma protocol into evidence on the second day of the preliminary injunction hearing, the council opposite said they'd never seen it before. So Mississippi, the commissioner, has not, they're not using the Glossip Protocol, if that's what the Supreme, if it can be said that the Supreme Court approved the Glossip Protocol. They're taking midazolam, is their proposal, and putting it into a protocol that was developed for another drug. My question derived from the underlying assumption that simply an allegation of nonconformity with the state law does not create, it's not alone. You have to demonstrate that there is some constitutional violation independent of that nonconformity of the state law that is created by that noncompliance. That's why I directed your attention back to Hicks, which comes closer, but it also doesn't get you there either, but I'll quickly tell you that. But it did strike me as going down the road of where you're going. That's the difficulty I'm having, so I want to share that with you. You could disabuse me of that. Our point in response to that, Your Honors, is twofold. First of all, let me start by saying, as we cited in our brief, I believe, that the Glossop opinion specifically said that when a method of execution is authorized under state law and then went forward with the Eighth Amendment, its Eighth Amendment discussion, because Oklahoma had approved the use of various drugs for their lethal injection protocol. Mississippi has not done that. And it is, in our judgment, if counsel opposite is right, that the state is allowed to violate the liberty interests of its residents by confining them or punishing them outside the bounds of the legislation. Wait, wait, wait. Yes. This is where I'm having a little bit of trouble. I can see how confining someone beyond fifty years or whatever the state statute says is a liberty issue. I'm having more difficulty seeing how ending someone's life with one drug as opposed to another is a liberty issue. It might be a due process issue that the process wasn't followed to use the correct drug. The punishment is the same, which is death. It's just a question of how it's inflicted. I disagree with that respectfully. First of all, I mean, it's not just death versus not death. We're talking about the nonconsensual injection of drugs, which is also a liberty interest. Not when the death penalty—when the penalty—the penalty is death. That's the goal here of what the Supreme Court has said is authorized, substantive due process and Eighth Amendment. But the penalty of death in Mississippi is in a particular fashion, and these drugs are not the same. I'm having a hard time seeing how that's—you might have a procedural due process issue perhaps, but I don't—I'm having difficulty seeing how substantive due process. It doesn't equate to being in prison beyond the statutory time limit. The sentence here, the punishment is death, however you slice it, not death by a particular means. I respectfully disagree. The sentence is punishment in accordance with state law, so that the commissioner would not be free to use the firing squad, for example. Well, this goes back to the earlier exchange that you get something going on in substantive due process, but the ultimate right you have here is that the state has a right to take his life, and the difficulty here is that they're not going to deprive him of a life without due process and law. As such, in other words, your argument is that you're carrying out the execution otherwise lawfully in an unconstitutional manner, and that means it's the Eighth Amendment. And that's why I started with the question, how do you get an Eighth Amendment question argument going in light of the Supreme Court's decision? And we've had that exchange. Yes, Your Honor, and there's another way of looking at it too. You referenced Dr. Heath's affidavit, or declaration really, in your questioning of counsel opposite. Dr. Heath talked about the reasons from a pharmacological perspective why the statute would read the way it does. And what Dr. Heath said was that in Mississippi, with the use of continuous intravenous administration of the drugs, that using an ultra-short-acting barbiturate was— What evidence is there in the record that the drug that they're now using fits that definition? It is an entirely different chemical. It's an entirely different chemical handling. What evidence is in the record that says that? The evidence is—well, we asked the court essentially to take judicial notice of that from the opinion in Glossop, which says quite plainly that midazolam is a benzodiazepine. The statute says ultra-short-acting barbiturate, and a barbiturate is a set of classes of drugs. Ultra-short-acting barbiturate is a subclass of that. Midazolam is a benzodiazepine. It's completely outside the category to begin with. It's not even another subset of the barbiturate family. It seems to me you didn't plead that. That shouldn't be part of this hearing. You've now amended your pleadings, and you can go back and argue that to the district court. Why shouldn't we at least strike that part of the injunction? Well, I think the court should take into account the situation that existed. This hearing was set for the 29th of July of this year. All the way up through the 28th of July, the protocol that we were pleading against not only did not include midazolam, but as we pointed out in our briefing to the district court, counsel opposite had told a judge in another proceeding that they would not countenance using midazolam. So we didn't plead it. You haven't litigated that in the district court. That's my only point. We didn't have an opportunity to, Your Honor. Well, you do now. We do now. Yes. You've finished your complaint, and the district court should not have entered an injunction based on no record and no pleadings. The district court, in our view, was within the discretion of the district court to recognize that Mississippi was using a drug outside the category of the drugs set forth by state law. What evidence in the record supports the district court's conclusion that midazolam falls outside the broad language of Mississippi Code 99-1951? Because the language says barbiturate, and midazolam is not a barbiturate. It says or other similar drug also. It does say or other similar drug, Your Honor, but it's going to be a question of interpretation what similar drug means, and it was certainly within I haven't heard that there was any evidence in the record to support the conclusion that it falls outside barbiturate or other similar drug. The reason, let me answer that in two ways. First of all, for it to be an other similar drug, we think at a minimum it should be in the same class or category of drugs as a barbiturate. Was there any testimony or evidence of that presented before the district court? There was evidence in Dr. Heath's affidavit about the purpose for that. Your Honor, we had eight hours. They talk about us ambushing them at this hearing. We had eight hours, and not only had they changed the drug, they asked the state court to set an execution date 30 days ahead. There was no practicable way for us to move that hearing, replete, and seek another expert's advice about midazolam. The fact is we had said— But you could ask for continuance and ask the court to grant a continuance and ask for a stay in pending further proceedings. I mean I don't understand why we should litigate the merits of this on we don't have a record. Your Honor, we're talking about two different courts. We could have asked for a continuance from the district court, but the district court granting a continuance of the preliminary injunction hearing would not have had any effect on the state court, which was being asked to set an execution date 30 days away from that hearing. So to change the—and counsel opposite in their briefing had said when they argued this mootness point that there would be ample time for us to litigate the merits of any new protocol to file a new complaint. Well, the district court could have stayed, the state court any execution until there had been a hearing on the new drug. Well, only for—from that perspective, Your Honor, only from a temporary restraining order perspective, which would not have been—I don't know if that would have been long enough or not. But to do what the court is—all three of Your Honors is suggesting. But if that be the case, then I think certainly this injunction could be refined and set a new hearing specifically on midazolam. But the point is we had said as early as the 3rd of June that our due process claim did not—the reason why it was not moot was because there was a reasonable chance that the commissioner would again select a drug that was not within the statutory class of drugs. And we asked in that connection for the preliminary injunction to bar the state from using anything that is not an ultra short-acting barbiturate. Because otherwise we end up having a full trial on the merits on the use of—for example, whether midazolam is or is not an ultra short-acting barbiturate or other similar drug. That is the issue in the case with respect to count two. And so what counsel opposite is suggesting was that we would have been required to put on our whole trial on the merits on that point as opposed to saying, Your Honor—which is what we did. Your Honor, in Glossop it's clear that midazolam is a benzodiazepine. It's in the same class of drugs as Xanax. It's not—and that's in the opinion. It's not a barbiturate, let alone an ultra short-acting barbiturate. And we were—and we had the affidavit of Dr. Heath that even compounded pentobarbital was not another similar drug with detailed scientific reasons why that was his opinion. So we went forward on the basis of Dr. Heath's affidavit about the importance of the rate of onset and the duration of effect of an ultra short-acting barbiturate and said, Well, midazolam is not even a barbiturate. It's a different chemical structure. So how it could be a, quote, similar drug— What are you asking this court to do? We're asking the court to affirm the preliminary injunction. We have a trial set by agreement for July of next year. On what? On the first amended complaint. July of next year? That's correct, Your Honor. By agreement of the parties. We had a scheduling conference, and all parties agreed. That gave opportunity for discovery. For example, this notion that the state of Mississippi can't buy a drug that every other state that uses barbiturates can buy, that seems to us to require discovery. We're preparing expert reports that are to be submitted this month. How can we possibly affirm an injunction where there's not evidence to support it? Even if you would say just maintain the status quo, we can't affirm an injunction where there's not evidence to support it, can we? There is evidence, Your Honor, in the fact that both parties agree that midazolam is not a barbiturate. But that's not the end of the statute. Or other similar— Well, no, it's not an other similar drug to an ultra short-acting barbiturate. Where's the evidence of that? Well, that's what the statute says. Where's the evidence that it's not? The statute doesn't say it has to be a barbiturate. It says or other similar drug. And where is the evidence that what this new drug does is not similar in what it does to the ultra short-acting barbiturate? We did not put on evidence of the properties of midazolam. We did. There was no time to do that, and we would have been then seeking a preliminary injunction two weeks or one week before an execution date. Does it affect whether we can do what you ask us to do? I mean, basically your argument is, oh, we didn't have time, so we don't have evidence. If you don't have evidence, we can't affirm. My point, Your Honor, is that we didn't have time because the state changed the protocol the day before the hearing and asked for 30 days for an execution date. And in our judgment— Did you go to state court and challenge the use of the new drug in state court? We told the state court that the federal court order was proceeding, that the federal court was proceeding to the preliminary injunction, that we had had the hearing. We told the Mississippi Supreme Court that, in our view, midazolam did not fit the statutory definition. What did the Supreme Court say? They haven't done anything to this day. Why doesn't Mississippi's post-conviction relief procedure provide sufficient protection of the procedural due process interests to assure that appropriate enforcement of 1951 is carried out? Because there's no provision for pre-petition discovery in that statute that's referred to by counsel opposite. So the Mississippi—the commissioner has taken the position that the full identity, that documents related to lethal injection drugs are exempt from the Public Records Act. We've got a lawsuit pending about that. We've—the commissioner then, or the state of Mississippi—in Mississippi, you have to file a fully fact-pled post-conviction petition without the use of compulsory discovery. But this is a 1983 suit. It is. This is a 1983 suit, but Judge Elrod was asking about the post-conviction act. Yes, and when we filed the 1983 suit in state court for another prisoner, they said that the state courts didn't have jurisdiction to consider that case. Even if they—but you don't get the disclosure of the protocol under Sepulveda anyway. So this is the—what you're seeking, we've already said, you may not get, haven't we? No, the problem, Your Honor, is it's not just a matter of the details of the protocol. The—it's everything that would have to do with what kind of claim we could file. It's—I mean the only reason they even told us that they had it, that they were using midazolam was because we were in federal court. They were not obligated to tell us that otherwise. Let me ask you a question.  What's pending before the Supreme Court of Mississippi is the state's motion to set execution date, which they filed on the 28th of July. And you, in some fashion, have responded to that? Yes, Your Honor. We responded to that, I think, on the 5th. What issue has grown from those motions before that court? Nothing. No further proceedings have occurred. What is the issue that those motions address? Well, one issue is their argument is that because Mr. Jordan's habeas claim is complete, that under the statute the Supreme Court should set an execution date. Our response—thank you, I'm sorry. Our response is that this 1983 suit is pending and that the Supreme Court should wait and not set a date while the 1983 case is pending. Well, that sounds like to me it's completely upside down. You've come directly to federal court with a, at best, thin claim to invoke the jurisdiction of that court. And in doing so, you've shut down your state procedural rights that you have there to have this argument heard by a court interpreting this state law. Let me get to this question. Suppose we just vacated the order without record support, injunction, without being record support, not to bear it without record support. And then you're free to pursue that claim for the Mississippi court. Or if you think you can go further in the federal district court with the hearing and whatever, you proceed however you wish to proceed. It strikes me that it's very difficult for us to do much of anything other than vacate this order. But my question to you is if we just vacate the order for insufficient evidence, why does that—that would not appear to foreclose you from proceeding, going back to the Mississippi Supreme Court and making the same state law arguments you're making to us, albeit cast in a— you're saying that you get a constitutional violation out of a violation of state law, but they haven't said what the state law yet is. Do you follow me? Yes, I do, Your Honor. Just to say in the first instance, we certainly think the court acted within its discretion in this order. But, yes, I just want to make sure I said that. Yes, thank you. That's what—you've got to be careful. Yeah, I'm just—but obviously we would proceed on the basis—we filed an amended complaint. The amended complaint has detailed allegations about Medea's lamb. We've also responded in the state court, and we would proceed. It would not be the end of this issue, if that's what the court is saying. It strikes me that going back to Dr. Heath's affidavit, that in that process, you could obtain some assurances that you need with regard to the onset, that Supreme Court itself has approved, albeit with the qualifications of Justice Alito, the explanations that Justice Alito made. In other words, we don't have those explanations in this record, and you don't have those assurances from Mississippi yet. But Mississippi is not—may be able to give you those assurances, but you may be able to obtain that in your processes with the Supreme Court of Mississippi. And if you fail there, you first have a certiorari review directed to the high court, or you can go back to the federal court. You've got a lot of different paths which you could move to. Now, there's no execution date now set, as I understand it. That is correct. Not for any of the three people involved. So we're not interfering with some quick set execution. You apparently agreed to put this thing off until next summer or sometime that you get a hearing. I suspect because you couldn't get an earlier hearing, but that would seem to be the practical way to deal with the difficulties that we have here. May I just say, and I know my time is long run, that the district court's order, though, which actually says also enjoins the state from using pentobarbital specifically in its compounded form. So counsel opposite is wrong in saying it was non-compounded pentobarbital, that there is certainly ample evidence on that count. So if the court were to vacate the injunction, we think it would only be proper in terms of midazolam. We don't confess that point, but I understand it. I understand you want to take away as much as you can. My question, though, is to understand what impact such a ruling, if we were to decide that, that fashion, by simply saying that there is no evidence to sustain they jumped and granted, vacated, and then needed to go back. We'll see what the state thinks. Yes, Your Honor. I fear that we will be back under very emergency circumstances. Maybe not.  Yes, ma'am. The court prohibits you from going to state court and saying the protocol that the state now says it's going to use violates the Mississippi state statute. Why do you not have a procedural vehicle to do that? That's why I said it before the Supreme Court now. Well, you're on habeas. Well, we're on a motion to set execution date, which is not a proceeding that admits to evidence. Do you have – let me ask you a different way. Yes. Not where you are now. Yes. Do you have a procedural vehicle under Mississippi law to say I'm not contesting my death sentence, I'm contesting the manner in which the state proposes to carry it out because it violates the Mississippi statute? Can you file such a lawsuit under Mississippi law? So, no. Why not? Because that lawsuit has to be filed in Hines County, and the Hines County Circuit Court, granting a motion made by these defendants, held that it was not proper to file a 1983 suit in state court. I'm not saying 1983. I understand. I'm asking under state law. I understand. It was also under state law. I'm just saying that it was not proper that the Attorney General's office position is only a post-conviction petition can be filed in the state courts of Mississippi to raise the issue that is raised in this case. And I still don't understand why that's not adequate. Just because you can't get the pre-discovery, why can't you file the lawsuit with what now you have? Because the Mississippi Supreme Court, because the statute requires fact pleading, Your Honor, which is different from Louisiana, and that if we file a petition on the basis of what we know now, then the state will move for its dismissal on the grounds that it does not adequately, completely plead. In other words, it's not even an Iqbal standard. Shouldn't you have to try to bring your suit and see if they toss it out and then you have to argue later to us that it was ineffective rather than preempting by saying it's automatically not going to work? We should see if it's going to work because that's – Wolf v. McDonald says if you have – says that if it provides a forum for the assertion of the rights, that's all you get. Your Honor, the – if we were proceeding on a procedural due process theory, I would understand that point, and perhaps we will and perhaps that's what we should do. Let's say we don't want to – we disagree with you on substantive due process. I'm asking you about procedural due process, and I still don't understand what state law says you cannot attack the method of execution in state court as being violative of the Mississippi statute. It is according to the state of Mississippi and to the current rulings of the state courts. Well, you can't find a 1983 suit under state law. 1983 gives a citizen a right to complain of deprivations of federal law. Yes, I – yes. It's not – it's not – it's not – Yes, it would – You've got to go to some other – But, yes, but it doesn't – but my point is the other case that we filed covered both grounds. It was not – What did you – what state law did you sue under? Under this same statute. And the court said we do not have jurisdiction to determine if the state statute can be interpreted this way. Our own statute, we're not going to interpret it, not under 1983, but directly under the statute. Yes, Your Honor. That's exactly what the court said. The court said your only remedy is to seek relief through the post-conviction statute. But the post-conviction statute is where we're talking about. Why can't – there's no reason you can't go to post-conviction and try to challenge that the procedure doesn't follow the statute. We would have no better proof – Well, you've got – you could get an affidavit from any expert. You say that this drug does not fit within the statutory definition. Now, you don't need discovery to do that. That's true. So if we wanted to put all of our cards on that – all of our chips on that point and file the one suit that would foreclose any other types of claims – We don't have any other chips. I'm sorry. That's what we're here for. Okay. That's what we're here for. Sorry you think so, Judge Higginbotham. Thank you. And the court knows our position. I just want to hear – I want to hear what the – No, I'm way over my time. I appreciate it. Let's see what the state's reaction to this. They may know something about state law. May it please the court. This statutory interpretation issue was not part of that state court 1983 action that was filed. The Attorney General's Office, we did – the state did take the position that PCR was the way to go with the allegations that they were making. Petition relief? Yes, ma'am. And they could file successive petitions. And that is on appeal. You said that they could or could not file successive petitions. I believe they could, Your Honor. And you would – would you then contend this is successive or would you say no, this is not successive? I'm not sure, Your Honor. I apologize. I haven't had a chance to think that through. But I believe – but they certainly could raise this issue. And the fact that there's no discovery shouldn't affect anything at all because under the terms of the scheduling order, their expert designation and opinions are due mid-December. You're talking about the federal court case? In the federal court case that we're in now. So to say that they don't have time to find out about my bedazzling or get an affidavit or a declaration from an expert, well, if they don't have it . . . They're doing that now anyway. They're doing that now anyway. And I would like to point out that the focus of the vast majority of this argument was on bedazzling. And, again, as the court amply pointed out, that hadn't been pleaded. But to answer – to respond to your statement earlier, Justice Siegenbotham, about the one-drug protocol, 14 states currently have a one-drug protocol. Seventeen states use a two- or three-drug protocol. So there's actually not even a majority of states have gone to a one-drug protocol. But that's not what the executions have been carried out. That was the . . . That is true, Your Honor, but being able to carry them . . . The states are carrying these things out or moving the other end. That doesn't control this issue. But, Your Honor, the issue is not . . . Let's get back to the question of what's the state's position here. And the issue is not whether or not there might be a better way. The issue is whether or not Mississippi's protocol satisfies . . . The issue is whether there's a better way when you're talking to the legislature. That's true, Your Honor. And it is important, as all three of you noted during Counsel Opposite's argument, that the cases they cited are sentencing cases. My question to you is if we simply vacate this, it's not supported, you're going to wait until next summer to have a hearing. My question is where, in the meantime, you can't get a state court resolution of what the state law is. Can you help us with that? Well, Your Honor, my first part of my answer, which is twofold, is they haven't tried. The second part is they could. Now, whether it is a freestanding lawsuit or a post-conviction relief, there is a method in which they can challenge the procedure of state law. Does this comply with this statute? Well, PCR would be the best way, post-conviction relief. And again, the fact that there's no discovery and that it's fact-based . . . I'm asking you point blank. If they file PCR like you said they should, is the state going to take the position that this is excessive and should be denied? Or is the state going to say since this challenges the method of execution, it is not successive and they have the right to proceed on the merits? Now, I'd like an answer. And you can't bind the state because you're not a court. You're not the Mississippi Supreme Court. I want to know what the AG is going to argue, though. No execution is going to be . . . The courts, either state courts or federal courts, are not going to allow Mississippi to carry out an execution until the issue of midazolam has been litigated in one form or the other. So, they do have a right to challenge the use of midazolam because we changed the protocol. So, my answer standing here today, I would have to say, again, off the top of my head, I would say that we would not argue that it is successive. But that is not my final call. I agree with you. So, I believe they could file PCR. If they're telling us they should go there, though, then you can't block them for having the initial challenge there. It doesn't seem appropriate. And I'm saying that I would not say that they can't file initial challenge there. I think PCR would be the appropriate vehicle. Okay. I have a question about . . . What we're trying to do is to get this before a state court who can interpret the state law. And I would think that the state of Mississippi would like to, and I think you do, want to join in that effort. You may disagree about the outcome of that. You have different positions, obviously. But you should have a common goal here, at least a goal that putting on the plaintiff here that you would share, that to get them a hearing before the state court. That solves a lot of these problems. And, Your Honor, and candidly, when you change the protocol shortly before the hearing, because in addition to their Eighth Amendment claims, which they clearly have, we're trying to . . . I apologize. We're familiar with the fact pattern of what happened. We were trying to move this to let's get Midazolam, let's get a record on Midazolam, let's get that issue decided, because they certainly have at least an arguable Eighth Amendment claim about the use of Midazolam. Even if they lose an Eighth Amendment, they've got a procedural due process argument. And if they can't . . . And we need to know whether the state courts are going to give an answer to that. I mean, you see where we are. I do, Your Honor. And, again, I think I've given the best answer I can, which is I agree that they have a remedy in the state court to challenge this. And I see my time has expired. I have a question. Yes, ma'am. You know, we talk about just vacating this because it's not supported by evidence. But the part about the compounded pentobarbital is supported, arguably, by evidence. And so it would seem that that part would have to be vacated either on your original . . . Well, I guess it could have staked through it if we did it on your original Pennhurst argument, or on the mootness. Because I don't know that we can just vacate that on the fact that there's no evidence. Can we? I agree that compounded pentobarbital is . . . There is evidence in the record concerning that. But, again, Pennhurst, our argument, would foreclose that also. I would like to say one thing on the record. Is the mootness the other route for that? It is, Your Honor, because we don't have it, and we've offered to stipulate that we won't use it. Okay. But otherwise, we're stuck with that part of the ruling. If it's limited to compounded pentobarbital, I believe yes. Okay. I just want to say one thing for the record. I know my time expired. When I said this particular statement was made at the hearing, that I'd never seen Oklahoma's protocol, that's not an accurate representation. What I said was I'd never seen the document that counsel handed me from him. We hadn't seen this. He hadn't handed me this and said this is an exhibit until just now. But that does not mean we were not familiar with Oklahoma's protocol. Your Honor, look, in conclusion, I would just like to say that, you know, Bays and Gloucester make clear that capital punishment is constitutional. Therefore, there must be a means to carry it out. The Polarian Junction nearby the district court here forbids the state of Mississippi from using any means of enforcing that. Now, Richard Jordan and Thomas Loden have exhausted all of their state and federal appeals. The only thing standing between them and executions is this lawsuit. Now, Richard Jordan has been on death row for almost 40 years. Every day that the Preliminary Injunction is in place prohibiting Mississippi from carrying out death sentences, you know, is an injury to the state. You agreed to it for a year extension, it sounds like. Right. Why did you agree to such a long trial date if that's your position? Well, Your Honor, we did not say, because the district court told us to confer and agree on a scheduling order, we did not say that we were not going to raise, you know, come here and ask for relief. And it's not like we just said, oh, yes, we should just put this off to July. And I don't want to— I got it. But the bottom line is that the state and the victim's families, they are entitled to some final justice. And after 38 years, we think that's ample. You know, they've had time. So we asked the court to vacate. We've got your argument. Understood. Thank you, Your Honor.